Argued May 29, affirmed in part;
reversed in part August 20, 1979

## REDDAWAY TRUCK LINE,
### *Respondent,*
*v.*
## W.C.C.S., INC., ·
### *Defendant,*

## MINDEL,
### *Appellant.*
## (No. A7709-13251, CA 12195)

599 P2d 469

Donald J. Friedman, Portland, argued the cause for appellant. With him on the briefs was Black, Kendall, Tremaine, Boothe & Higgins, Portland.

John L. Langslet, Portland, argued the cause for respondent. With him on the brief was Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Reddaway Truck Line (Reddaway) brought an action against W.C.C.S., Inc. (W.C.C.S.) to recover the value of services rendered. It joined with that action a suit to set aside an allegedly fraudulent transfer of assets from W.C.C.S. to Phillip Mindel.[1] The trial court entered a "judgment and decree" for Reddaway. Mindel appeals the money judgment entered against him. W.C.C.S. did not appear below and is not involved in this appeal.

W.C.C.S. was incorporated in February, 1977. All the capital was furnished by Mindel. Ninety percent of the corporate stock was issued to L. R. Brokinshire as trustee for Mindel. The remainder of the shares were issued to Brokinshire personally. Brokinshire and Robert Williams were elected the sole directors and officers, and Williams was hired as general manager.

W.C.C.S. was in the business of loading and unloading containers from railcars, trucks and ships. Its largest customer was Mindel Brokerage Company (Mindel Brokerage), a corporation which dealt in cattle hides. Phillip Mindel is the sole stockholder of Mindel Brokerage. When Williams complained to Mindel of W.C.C.S.'s cash flow problems, beginning in April, 1977, Mindel arranged loans from Mindel Brokerage to W.C.C.S. From April to July, checks totalling $15,500 were written to W.C.C.S. on Mindel Brokerage's account. Sometime in July or August, Williams signed a $15,000 promissory note on behalf of W.C.C.S. in favor of Mindel Brokerage.

From June through September, 1977, Reddaway provided trucking services to W.C.C.S. at an agreed rate per container. The reasonable value of the services was $6,185.50. W.C.C.S. paid only $973. Reddaway management complained several times about W.C.C.S.'s delinquency and met two or three times

---

[1] This case involves only a claim of a common law fraudulent preference.

[525]

with Williams to discuss the problem. Shortly after the last meeting, Mindel took the corporate books and checkbook from Williams. Williams notified Reddaway that Mindel had done that and that W.C.C.S. was being "disbanded."

On September 9, a check for $5,000 was issued to Mindel Brokerage from W.C.C.S. In October and November, two other checks totalling $3,400 were drawn on W.C.C.S.'s account, payable to Mindel Brokerage. All three checks were signed by Brokinshire.

Reddaway alleged in its complaint:

"On or about the 9th day of September, 1977, defendant Mindel caused to be transferred to his personal use all W.C.C.S., Inc. assets, including a checking account in the amount of $4,000 and accounts receivable of more than $17,000 without consideration.

"W.C.C.S., Inc. was rendered insolvent by the transfer above alleged and the property transferred consisted of substantially all of W.C.C.S., Inc.'s property. The transfer had the effect of defrauding plaintiff."

Mindel argues that the transfer was not fraudulent and that even if it were, there was no evidence of a transfer to him personally. We need not read the first assertion.

There was no evidence of a transfer of W.C.C.S. assets to Mindel personally. All the checks were issued to Mindel Brokerage, but for some reason not apparent on the record it was never made a party to this proceeding. While Mindel may have exerted improper control over the affairs of W.C.C.S. and may have actually directed the transfers to Mindel Brokerage, there was no evidence that he himself was a transferee. Although Mindel is the sole stockholder of Mindel Brokerage, that corporation is a separate legal entity. Under the pleadings, the proof and the theories urged by Reddaway, there was no basis for personal

liability on Mindel. That portion of the judgment and decree holding Mindel liable is reversed.[2] The judgment against W.C.C.S. is affirmed.

Affirmed in part; reversed in part.

---

[2] The possibility of liability under ORS 57.630 is not before us. On appeal plaintiff does assert ORS 57.221 and 57.231 to support the decree, but that theory was not raised below in the complaint which alleged a fraudulent conveyance.